**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 1101 K Street, N.W., Suite 201 Washington, D.C. 20005,<br><br>                              Plaintiff,<br><br>     v.<br><br>U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Ave., N.W., Washington, DC 20530, and<br><br>WILLIAM P. BARR, in his official capacity as Attorney General, 950 Pennsylvania Ave., N.W., Washington, DC 20530,<br><br>                              Defendants. | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against Defendants U.S. Department of Justice and William P. Barr, in his official capacity as Attorney General (collectively, "DOJ"), alleging as follows:

1.     This is an action for injunctive and declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, challenging DOJ's failure to release the public financial disclosure reports of former Acting Attorney General Matthew Whitaker in response to CREW's lawful request for those reports, in violation of the Ethics in Government Act ("EIGA"), 5 U.S.C. app. § 101, *et seq*.

2.     CREW respectfully requests that the Court declare DOJ's failure to release the requested reports to be "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" and "unlawfully withheld" agency action in violation of the APA, 5 U.S.C. § 706, and order DOJ to release the versions of Whitaker's financial disclosure reports that were in DOJ's possession, custody, or control at the time of CREW's request.

## JURISDICTION AND VENUE

3.     This action arises under the APA, 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court has personal and subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States).

4.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

5.     Plaintiff CREW is a nonprofit, non-partisan corporation, organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials.  To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and outside influences that may bear on those actions.

6.     Defendant DOJ is an agency within the meaning of the APA, 5 U.S.C. § 701, and EIGA, 5 U.S.C. app. §§ 105, 109.

7.     Defendant William P. Barr is the Attorney General of the United States and is sued in his official capacity only.

## LEGAL FRAMEWORK

### *The Ethics in Government Act*

8.      Congress enacted EIGA in 1978, in the aftermath of the Watergate scandal.  *See*

Pub. L. No. 95-521, 92 Stat. 1824 (1978).  EIGA imposes financial disclosure obligations on

individuals holding or seeking certain public offices.  *See* 5 U.S.C. app. §§ 101-11; 5 C.F.R.

§ 2634.

9.      EIGA established the Office of Government Ethics ("OGE") to administer key

portions of the statute.  5 U.S.C. app. §§ 401-402.  OGE's responsibilities include

(a) promulgating regulations governing the "filing, review, and public availability" of financial

disclosure reports; (b) "monitoring and investigating compliance with the public financial

disclosure requirements of [the statute] by officers and employees of the executive branch and

executive agency officials responsible for receiving, reviewing, and making available financial

statements filed pursuant to such title"; (c) "interpreting rules and regulations issued by the

President or the Director governing conflict of interest and ethical problems and the filing of

financial statements"; and (d) "establishing a formal advisory opinion service whereby advisory

opinions are rendered on matters of general applicability or on important matters of first

impression . . . , and whereby such advisory opinions are compiled, published, and made

available to agency ethics counselors and the public."  *Id.* §§ 402(b)(1), (3), (6), (8).

10.     The legislative history shows that Congress designed EIGA to be "a

comprehensive statute requiring full and complete public financial disclosure by high-level

officials in all three branches of the Federal Government."  S. Rep. 95-170, at 42, 1978

U.S.C.C.A.N. 4,216, 4,258 (Mar. 16, 1977).  Congress recognized that mandating public

financial disclosure would "increase public confidence in the government"; "deter conflicts of interest from arising" by ensuring that officials' financial activities would "be subject to public scrutiny"; "deter some persons who should not be entering public service from doing so"; and "better enable the public to judge the performance of public officials." *Id.* at 21-22.

11.     OGE regulations implementing EIGA's public disclosure requirements similarly recognize that those requirements are intended "to ensure confidence in the integrity of the Federal Government by demonstrating that they are able to carry out their duties without compromising the public trust." 5 C.F.R. § 2634.104(a).

12.     To achieve these goals, EIGA and its implementing regulations require Executive Branch officials to file public financial disclosure reports ("PFD reports"). *See* 5 U.S.C. app. § 101(f); 5 C.F.R. § 2634, subpt. B.

13.     There are several types of PFD reports, including Candidate, Nominee, New Entrant, Annual, Termination, and Periodic Transaction. 5 U.S.C. app. §§ 101(b), (d), (e), 103(l); 5 C.F.R. § 2634.201(a)-(f).

14.     EIGA mandates that PFD reports "shall be filed by the reporting individual with the designated agency ethics official at the agency by which he is employed." 5 U.S.C. app. § 103(a). They are filed through the Integrity electronic financial disclosure system, which is used throughout the federal government to collect, manage, process, and store PFD reports.

15.     When filing a PFD report through Integrity, the filer electronically signs the report and makes the following certification: "I certify that the statements I have made in this form are true, complete and correct to the best of my knowledge." OGE Form 278e (OMB No. 3209-0001); 5 C.F.R. § 2634.602(a) ("Filers must certify that the information contained in the

report is true, correct, and complete to their best knowledge.").  By so certifying, filers subject

themselves to potential civil and criminal liability for filing a PFD report with false or

incomplete information.  *See* 5 U.S.C. app. § 104.

16.     Pertinent here, an official must file a New Entrant PFD report "[w]ithin thirty

days" of assuming a covered position, 5 U.S.C. app. § 101(a); 5 C.F.R. § 2634.201(b)(1), and

must file an Annual PFD report by "May 15 of the succeeding year," 5 U.S.C. app. § 101(d); 5

C.F.R. § 2634.201(a).

17.     After a PFD report is filed, the agency reviews it.  "Each designated agency ethics

official . . . shall make provisions to ensure that each report filed with him under this title is

reviewed within sixty days after the date of such filing."  5 U.S.C. app. § 106(a)(1).  "If after

reviewing [the] report . . . the designated agency ethics official . . . is of the opinion that on the

basis of information contained in such report the individual submitting such report is in

compliance with applicable laws and regulations, he shall state such opinion on the report, and

shall sign such report."  *Id.* § 106(b)(1).

18.     EIGA confers a public right of access to PFD reports, providing that "[e]ach

agency" and "supervising ethics office in the executive . . . branch . . . shall make available to the

public . . . each report filed under this title with such agency or office."  5 U.S.C. app. § 105(a).

Specifically, "each agency" and "supervising ethics office . . . shall, within thirty days after any

report is received under this title by such agency or office . . . permit inspection of such report by

or furnish a copy of such report to any person requesting such inspection or copy."  *Id.*

§ 105(b)(1).

19.     OGE regulations mirror these requirements, providing that "[e]ach agency must make available to the public in accordance with the provisions of this section those public reports filed with the agency by reporting individuals," and "[e]ach agency will, within 30 days after any public report is received by the agency, permit inspection of the report by, or furnish a copy of the report to, any person who makes written application as provided by agency procedure."  5 C.F.R. §§ 2634.603(a), (c).

20.     On December 6, 2018, OGE issued a program advisory entitled "Prompt Release of Public Financial Disclosure Reports," PA-18-03, *available at* https://bit.ly/2IpdJOb ("OGE Program Advisory 18-03").  The advisory "reminds Designated Agency Ethics Officials . . . of their obligation to promptly make available copies of public financial disclosure reports filed with their agency." *Id.*  The advisory explains that under EIGA, "all public financial disclosure reports must be made available within 30 days of filing with the agency *regardless of whether the agency has reviewed or certified the report*." *Id.* (citing 5 U.S.C. app. § 105(b)(1) (emphasis added)).

21.     A PFD report may be obtained by "any person" who submits a "written application . . . stating" their "name, occupation and address; . . . the name and address of any other person or organization on whose behalf the inspection or copy is requested; and . . . that such person is aware of the prohibitions on the obtaining or use of the report."  5 U.S.C. app. § 105(b)(2).

22.     Thus, upon submitting a proper request for a PFD report, a requester is entitled under EIGA to receive the version of the report that was in the agency's possession, custody, or control at the time of the request, so long as the report was filed with the agency at least 30 days

6

prior to the request.  The agency, correspondingly, has a non-discretionary duty to promptly release that report.  This duty applies regardless of whether the agency has reviewed or certified the requested report.

23.     OGE Form 278e is the standardized form used by Executive Branch officials to complete their PFD reports, and OGE Form 201 is the standardized form to request such reports.

***The Administrative Procedure Act***

24.     The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

25.     The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

26.     A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  The reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* §§ 706(1), (2)(A).

## FACTS

27.     Prior to joining the Trump Administration, Matthew Whitaker was involved in various business ventures of questionable character.  Among those ventures was MEM Investment LLC, a company Whitaker formed and used in 2012 to purchase and develop an affordable-housing apartment building in Des Moines, Iowa.  By the Spring of 2016, the

company failed to deliver on the contracted renovation, the city terminated the loan agreement, the bank declared MEM in default of its $687,000 mortgage, and the property was sold to another developer.

28.     Whitaker also served on the advisory board of World Patent Marketing ("WPM"), receiving nearly $17,000 in compensation from the company between 2014 and 2017.  In March 2017, the Federal Trade Commission charged WPM with fraudulently deceiving consumers and suppressing complaints through intimidation and the use of gag clauses.  WPM and Whitaker himself reportedly invoked Whitaker's background as a former United States Attorney in threatening customers who sought to recoup financial losses from the company.

29.     Whitaker joined DOJ in the Fall of 2017, first serving as Chief of Staff for the Attorney General from October 4, 2017 to November 7, 2018, and then as Acting Attorney General from November 7, 2018 to February 14, 2019.  He left DOJ on March 2, 2019.

30.     Whitaker filed his New Entrant PFD report with DOJ on November 18, 2017, through the Integrity system.  Ex. 1.  He electronically signed the report and made the following certification: "I certify that the statement I have made in this form are true, complete and correct to the best of my knowledge."

31.     Whitaker filed his Annual PFD report with DOJ on May 15, 2018, through the Integrity system.  Ex. 2.  He again electronically signed and certified that the statements he made in that report were "true, completed, and correct" to the best of his knowledge.  *Id.*

32.     On November 7, 2018, CREW filed an OGE Form 201 with DOJ requesting Whitaker's PFD reports, which, as noted, Mr. Whitaker had certified on November 18, 2017 and May 15, 2018.  Ex. 3.

33.     At the time of CREW's November 7, 2018 request, both Whitaker's New Entrant PFD report (filed November 2017) and Annual PFD report (filed May 2018) had been in DOJ's possession, custody, or control for well over 30 days.  Thus, upon submitting its request to DOJ, CREW was entitled to the versions of the PFD reports initially filed by Whitaker ("Whitaker's as-filed PFD reports"), and DOJ had a corresponding duty to promptly release those reports, even though the agency's ethics official had not yet added their certification to Mr. Whitaker's certification of each report.  *See* 5 U.S.C. app. § 105(b)(1); 5 C.F.R. §§ 2634.603(a), (c); OGE Program Advisory 18-03.

34.     By email dated November 13, 2018, CREW asked DOJ for an update on the status of its November 7, 2018 request.  DOJ responded later that day: "Receipt confirmed. We are working on your request for OGE Form 278 reports, and will respond as soon as possible."

35.     DOJ did not release Whitaker's as-filed PFD reports to CREW.  Instead, on November 20, 2018, it released *later* versions of those reports, which had been reviewed and certified by two DOJ ethics officials.  Exs. 1-2.  The reports note that they were revised five times between November 7 and 20, 2018.  *Id.*

36.     To date, DOJ has not released Whitaker's as-filed PFD reports in response to CREW's November 7, 2018 request.

## CREW'S INJURIES

37.     DOJ's failure to release Whitaker's as-filed PFD reports in violation of EIGA has harmed CREW by denying it access to information it is entitled to receive by law and that it routinely utilizes in fulfilling its organizational objectives.

38.    CREW's mission is to protect the right of citizens to be informed about the activities of government officials and to ensure the integrity of government officials.  To further its mission, CREW routinely requests, reviews, and analyzes data obtained pursuant to EIGA, including PFD reports.  Such reports include critical information relevant to public officials' potential conflicts of interest, compliance with federal law, and other matters of significant public concern.  Using this information, CREW furthers its core mission of educating the public—through its website, press releases, reports, social media, and other methods of distribution—about the integrity of public officials and candidates for public office, their compliance with federal law, and our system of government.

39.    CREW also routinely relies on PFD reports in preparing requests for investigations concerning potential legal violations by federal officials.  For example:

    a.   In November 2019, CREW submitted a request for investigation to the Department of Justice ("DOJ") and OGE regarding apparent omissions from President Trump's 2017, 2018, and 2019 PFD reports.  *See* Letter from CREW to DOJ and OGE, Nov. 25, 2019, *available at* https://bit.ly/2qSIYeO.

    b.   In April 2019, CREW submitted four requests for investigation to DOJ and the U.S. Attorney's Office for the Southern District of New York regarding apparent omissions from President Trump's 2017 PFD report.  *See* Letter from CREW to DOJ and S.D.N.Y, April 9, 2019, *available at* https://bit.ly/2MWcSJo.

    c.   In March 2019, CREW submitted a request for investigation to OGE regarding apparent omissions from the Termination PFD reports of seven former White

House officials.  *See* Letter from CREW to OGE, March 27, 2019, *available at* https://bit.ly/2uyx5ZI.

d.  In January 2019, CREW submitted a request for investigation to DOJ regarding Ivanka Trump's potential violation of the federal conflict-of-interest statute, which relied extensively on PFD reports of Ms. Trump and her husband, Jared Kushner.  *See* Letter from CREW to DOJ, Jan. 4, 2019, *available at* https://bit.ly/2BYTseb.

e.  In October 2018, CREW submitted a request for investigation to the Department of State's Office of Inspector General regarding former United Nations Ambassador Nikki Haley's acceptance of free flights on private aircraft, which relied extensively on Ms. Haley's annual PFD report.  *See* Letter from CREW to State Dep't OIG, Oct. 8, 2018, *available at* https://bit.ly/2OKJbe2.

f.  In June and August 2018, CREW submitted requests for investigation to DOJ, OGE, and the Department of Commerce Office of Inspector General concerning potential criminal conflicts of interest and false statements by Secretary of Commerce Wilbur L. Ross, all of which rely extensively on Secretary Ross's public financial disclosure reports.  *See* Letter from CREW to DOJ and Dep't of Commerce OIG, Aug. 16, 2018, *available at* https://bit.ly/2DxRrJI; Letter from CREW to DOJ and OGE, June 22, 2018, *available at* https://bit.ly/2M6Pas8.

g.  In April 2018, CREW submitted a request for investigation concerning potential false statements and violations of ethical obligations by Mick Mulvaney, Director of the Office of Management and Budget and Acting Director of the Consumer

Financial Protection Bureau, which likewise relied extensively on public financial

disclosure reports.  *See* Letter from CREW to Sens. Mike Enzi and Bernie

Sanders, and Inspector General of the Federal Reserve, April 30, 2018, *available*

*at* https://bit.ly/2OACzyM.

40.     CREW routinely requests PFD reports from DOJ and other agencies, and plans to

continue doing so in the future.

41.     When DOJ or other agencies unlawfully fail to release PFD reports to which it is

entitled in response to CREW's requests, CREW is deprived of information critical to advancing

its mission of identifying, and informing the public about, issues bearing on the integrity of

public officials, their potential conflicts of interest, and their compliance with federal law.

42.     Consistent with its routine organizational use of PFD reports, CREW has a

particularly strong interest in obtaining Whitaker's as-filed PFD reports.  In submitting those

reports, Whitaker electronically signed them and "certif[ied] that the statements . . . made in this

form are true, complete and correct to the best of [his] knowledge."  By so certifying, Whitaker

subjected himself to potential civil and criminal liability for filing a PFD report with false or

incomplete information.  *See* 5 U.S.C. app. § 104.  Yet Whitaker's PFD reports were revised no

less than five times before DOJ ethics officials finally certified them, calling into question

whether there were material omissions or misstatements in Whitaker's as-filed PFD reports.

Moreover, comparing the as-filed PFD reports to the later versions ultimately released by DOJ

will provide critical insight into whether DOJ adequately fulfilled its legal obligations in

reviewing and certifying the reports.  To evaluate these issues and make appropriate use of the

information in furtherance of its organizational mission, CREW must gain access to the

requested versions of the reports that DOJ has refused to release.

## CREW'S CLAIM FOR RELIEF

### Count I
### (Violation of the APA and EIGA – Failure to Release the As-Filed Versions of Whitaker's PFD Reports)

43.      CREW re-alleges and incorporate by reference all preceding paragraphs.

44.      EIGA provides that "each agency . . . shall, within thirty days after any report is

received under this title by such agency or office . . . permit inspection of such report by or

furnish a copy of such report to any person requesting such inspection or copy."  5 U.S.C. app.

§ 105(b)(1).

45.      An agency's duty to release PFD reports in accordance with 5 U.S.C. app. § 105

is mandatory and non-discretionary.

46.      On November 7, 2018, CREW filed an OGE Form 201 with DOJ requesting

Whitaker's PFD reports.

47.      At the time of CREW's November 7, 2018 request, both Whitaker's New Entrant

PFD report (filed November 2017) and Annual PFD report (filed May 2018) had been in DOJ's

possession, custody, or control for well over 30 days.  Thus, upon submitting its request to DOJ,

CREW was entitled to the as-filed versions of Whitaker's PFD reports, and DOJ had a

corresponding duty to promptly release those reports, even though the agency had not yet

reviewed and certified them.  *See* 5 U.S.C. app. § 105(b)(1); 5 C.F.R. §§ 2634.603(a), (c); OGE

Program Advisory 18-03.

48.     To date, DOJ has not released Whitaker's as-filed PFD reports in response to CREW's November 7, 2018 request.

49.     DOJ's refusal to release the requested PFD reports violates the agency's non-discretionary duty to release PFD reports in accordance with 5 U.S.C. app. § 105, and therefore is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "unlawfully withheld" agency action, 5 U.S.C. § 706(1).

50.     As alleged herein, DOJ's unlawful actions have harmed CREW by depriving it of information it is entitled to receive under EIGA, and that CREW needs for its organizational work.

51.     CREW has exhausted all available administrative remedies under EIGA.

## PRAYER FOR RELIEF

WHEREFORE, CREW respectfully requests that this Court:

1.     Declare DOJ's failure to release Whitaker's as-filed PFD reports in response to CREW's request to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "unlawfully withheld" agency action in violation of the APA, 5 U.S.C. § 706, and EIGA, 5 U.S.C. app. § 105.

2.     Order DOJ to release Whitaker's as-filed PFD reports to CREW;

3.     Award CREW its costs and reasonable attorneys' fees in this action; and

4.     Grant such other and further relief as the Court may deem just and proper.

Date: January 9, 2020                    */s/ Nikhel Sus*
                                         NIKHEL S. SUS
                                         (D.C. Bar No. 1017937)
                                         ADAM J. RAPPAPORT
                                         (D.C. Bar No. 479866)
                                         Citizens for Responsibility and Ethics in
                                         Washington
                                         1101 K St., N.W., Suite 201
                                         Washington, D.C. 20005
                                         Telephone: (202) 408-5565
                                         Fax: (202) 588-5020
                                         nsus@citizensforethics.org

                                         *Counsel for Plaintiff*